STATE OF NORTH CAROLINA  FILED IN THE GENERAL COURT OF JUSTICE
COUNTY OF UNION COUNTY     SUPERIOR COURT DIVISION
              21 CVS 1865

2021 JUN 28 A 11: 37
UNION CO., C.S.C.

HOLLY PARK TOWNHOME )
ASSOCIATION, INC., )
     Plaintiff, )
          )
v.          )   **COMPLAINT**
          ) **(JURY TRIAL DEMANDED)**
MAIN STREET AMERICA )
ASSURANCE COMPANY, )
          )
     Defendant. )
          )

  **NOW COMES** Plaintiff Holly Park Townhome Association, Inc. ("Plaintiff" or "Holly Park"), by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

  1. Plaintiff is a North Carolina nonprofit homeowner's association with its principal place of business in Indian Trail, North Carolina. At all times relevant to this Complaint, Plaintiff managed and operated a complex comprised of eighteen (18) multi-family buildings located at 2102-2122 Mondo Lane – 4002-4099 Holly Villa Circle, Indian Trail, NC 28079 (hereinafter the "Property").

  2. Defendant Main Street America Assurance Company ("Defendant MSA") is a company existing under the laws of the State of Florida, with its principal place of business in Jacksonville, Florida. At all times relevant to this Complaint, Defendant MSA was transacting substantial business in North Carolina.

---

HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.
Attorneys at Law
Raleigh, North Carolina

Case 3:21-cv-00400-MOC-DSC Document 1-1 Filed 08/03/21 Page 1

EXHIBIT 1

## JURISDICTION & VENUE

3. Jurisdiction is proper pursuant to N.C.G.S. §§ 7A-240 and 7A-243.

4. The Court has personal jurisdiction pursuant to N.C.G.S. §1-75.4 - 5.

5. The Defendant has been properly served and brought before the Court pursuant to Rule 4 of the North Carolina Rules of Civil Procedure.

6. Venue is proper pursuant to N.C.G.S. § 1-80.

## FACTUAL ALLEGATIONS

7. Hurricane Florence made landfall in North Carolina on September 14, 2018, causing catastrophic damage to buildings and structures throughout the State over the course of several days.

8. The Property was no exception. Each of the eighteen (18) multi-family buildings located at 2102-2122 Mondo Lane – 4002-4099 Holly Villa Circle, Indian Trail, NC 28079 sustained severe wind damage as a result of Hurricane Florence.

9. Among other things, the hurricane damaged a substantial number of shingles (approximately 480) throughout the complex. The damage to the integrity of the buildings' roofs, including storm created openings, among other things, resulted in water being intruded into the interior of the buildings, damaging ceilings, walls, and floors in most, if not all, of the units, encompassing the Property (hereinafter the "Loss").

10. At all times relevant to this Complaint, the Property was insured by Defendant MSA under a MSA Businessowners Insurance Policy, Policy No. BPG4033R (hereinafter the "Policy"). The Policy is attached hereto as **Exhibit A**.

11. At all times relevant to this Complaint, the Policy provided Extended Value Replacement Cost and/or Replacement Cost Value (RCV) coverage for "physical loss of or

damage to Covered Property," including the eighteen (18) buildings and their roofs. Specifically, the Policy provided the following language under the Buildings – Extended Value Replacement Cost endorsement: "We will provide Replacement Cost to buildings insured for Replacement Cost." Regarding calculation of the loss payment, the Policy states, "[W]e will determine the value of Covered Property... [a]t replacement cost without deduction for depreciation subject to the following: You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage."

12. Plaintiff timely paid all premiums for the Policy, and the Policy was in full force and effect at the time of Hurricane Florence.

13. Damages from Hurricane Florence, specifically from associated winds and rain, to the Property and its roofs were covered causes of loss under the Policy, in addition to any ensuing losses therefrom.

14. Plaintiff notified Defendant MSA of the Loss and made a replacement cost claim under the Policy. Plaintiff's claims were assigned Claim Numbers 01-BPG4033R-100001 through 01-BPG4033R-100018 (hereinafter "the Claims").

15. Defendant MSA assigned Chad W. Rundell ("Rundell") of Baker Claim Services to adjust the claim. Plaintiff contracted with Travis Brown ("Brown") of Homeland Public Adjusting, LLC to assist with adjusting the Claims on or around October 8, 2018.

16. On or about November 13, 2018, Rundell purportedly inspected the Property. Based on that purported inspection, Rundell drafted an estimate for Plaintiff's Claims. Plaintiff

has reason to believe Rundell performed a "door-knocking" inspection, and many unit owners were unavailable. All interior damages were not addressed as a result. Notwithstanding, the Rundell estimate indicated that the entire value of the Claims, including damage to the Property's roofs and interiors, had a RCV of $85,656.89 and an ACV of $75,159.55. Of that total, Rundell estimated that the damage to the roofing systems had a RCV of $14,207.28 and ACV of $12,193.03 to cover the cost of materials and labor to <u>spot-repair</u> damaged shingles. Rundell's estimate is attached hereto as **Exhibit B**.

17. Plaintiff, at no time, agreed to and/or settled for the scope of repair (*i.e.*, for spot repairing of the substantial number of wind-damaged shingles), as outlined in the Rundell estimate with MSA through Brown or otherwise.

18. Upon information and belief, Brown, the Public Adjuster representing Plaintiff, passed away on January 3, 2020 (only days after Defendant MSA provided the Rundell estimate to Brown), canceling the contract between Brown and Plaintiff. Thereafter, Plaintiff contracted with Wesley Barber ("Barber") of Carolina Claims Consulting ("CCC") to assist with the ongoing adjusting of the Claims.

19. Since the time of the purported inspection by Rundell, Plaintiff has attempted roof repairs with multiple contractors. Plaintiff has expended thousands of dollars on these attempted repairs. These efforts have been unsuccessful.

20. Specifically, Plaintiff has had three contractors inspect and attempt repairs. Those contractors are: (1) WeatherGuard Roofing (2) Capital Exteriors & Renovations, and (3) Carolina Roof Consultants. All of the contractors have written statements in regard to their findings on attempting repairs (**Exhibit C**). They concur that spot repairing the roofs is not possible.

HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.
Attorneys at Law
Raleigh, North Carolina

Case 3:21-cv-00400-MOC-DSC   Document 1-1   Filed 08/03/21   Page 4 of 15

21. Upon hearing of the issue with repairability, Plaintiff, at its own expense, hired John Worden ("Mr. Worden") of JW Services of NC, Inc. for purposes of inspecting the site and making a determination as to repairability. Mr. Worden conducted a thorough inspection of the site and of multiple buildings' roofs on June 24, 2019. He too concluded that the "**appropriate repair would be to replace the entirety**" of the roof for each of the eighteen (18) multi-family buildings. The JW Services Report is attached hereto as **Exhibit D**.

22. Plaintiff obtained a full roof replacement estimate from Carolina Roof Consultants ("CRC") in accordance with Mr. Worden's conclusions and to further support its Claims. After a thorough assessment, CRC estimated that the cost to replace the Property's roofs was $654,512.[1] CRC has since withdrawn its bid and removed itself from the contracting process due to market and material cost increases.

23. As a result, Plaintiff retained a contractor to estimate the project via Xactimate, based on current market conditions. This contractor is Southern Restoration & Construction, Inc. ("Sothern Restoration"). Southern Restoration presented an itemized estimate for roof replacement for the complex. The current cost to replace is $1,176,359.64.

24. CCC has notified and supplied Defendant MSA's building consultant, Roy Mobley ("Mobley") of Grecco Construction Consultants, all relevant documentation concerning attempted roof repairs, reparability, and costs in an attempt to resolve the Claims.

25. Defendant MSA, through Mobley or otherwise, has not conducted a follow-up site visit to evaluate the repairability assessments and/or to supply an estimate. As such, Defendant MSA has failed to conduct a reasonable investigation.

---

[1] This estimate reflects the true and accurate amount to be charged based on an itemized list of repairs and costs. It additionally accounts for increases in material and labor costs.

26. Defendant instead indicated, among other things, that spot-repairs were appropriate at the time of loss given that repairs were made and/or that there has been additional damage to the Property's roofs outside the coverage period, which ended on April 26, 2019.

27. Plaintiff obtained drone footage of the Property on April 11, 2019 (well within the coverage period). A review of the same confirms that the roofs did not sustain any additional wind damage since Defendant MSA's initial inspection.

28. Meteorological data further confirms that no significant weather event occurred at the loss location since Defendant MSA's initial inspection.

29. The Property's roofing damages remain consistent with the date of loss damages.

30. On April 9, 2021, at its own expense and efforts, Plaintiff prepared a Sworn Statement in Proof of Loss ("Proof of Loss"), showing that the replacement cost value of the Claims was $1,256,781.65. This amount includes non-roofing repairs (as estimated by the carrier in December 2018), out-of-pocket costs for the failed roofing repairs, and Southern Restoration's itemized estimate for the materials and services that are necessary to replace the roofs from damages caused by Hurricane Florence. The April 9, 2021 Sworn Proof of Loss is attached hereto as **Exhibit E**.

31. CCC, on behalf of Plaintiff, submitted the Proof of Loss and supporting documentation (*i.e.*, Southern Restoration Estimate, Temporary Roof Repair Invoices with Summary, Carrier Estimate with Shingle Scope Summary dated December 6, 2018, Site Map, Statements from Contractors Regarding Reparability Conditions, JW Services Report, Carolina Roof Consultant Estimates and Letters, Measurement Reports with Summary, Itel Report, a link to the drone footage, and the National Weather Service's Report dated February 6, 2020) to Jeff Dean of MSA. The letter and attachments from CCC are attached hereto as **Exhibit F**.

32. In a letter dated May 15, 2021, Jeff Dean proclaimed that Defendant MSA rejects Plaintiff's Proof of Loss and estimate (despite failing to provide any factual basis for his disagreement). In the same letter, he simply indicated that Defendant MSA's position is unchanged – "the roofs were repairable at the time of the original inspection and MSAA has paid for the damage found at that time." The May 15, 2021 letter is attached hereto as **Exhibit G**.

33. Defendant MSA has failed to perform any further investigation or inspections of the Property, to make proper payment of the replacement cost Claims, to make any revisions to its prior estimates, or to do anything further to adjust the Claims. Instead, Defendant has compelled the insured, the Plaintiff, to file the instant litigation.

34. Without payment of the Claims, and as a result of Defendant's delay tactics and repeated, and unreasonable denials, Plaintiff incurred, and will continue to incur, significant expenses in mitigating its damages, attorney's fees, litigation costs, and other expenses and damages.

35. At all times, Plaintiff made itself and the Property available to Defendant, its agents, and its representatives and fully cooperated with Defendant, its agents, and its representatives to inspect and investigate the damage caused by Hurricane Florence.

36. The Defendant has failed to provide a reasonable basis for its failure to pay the amounts set forth in Plaintiff's Proof of Loss or for their protracted investigation and unreasonable positions taken in the adjustment of Plaintiff's Claims.

37. At all times throughout the investigation of the Claims, Plaintiff complied as promptly as possible with every request made by Defendant for information regarding the Claims and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

38. Following Hurricane Florence, Plaintiff was forced to repair, and will be forced to replace, the roofing systems on each of the eighteen (18) buildings due to the massive amounts of damage as a result of the hurricane. Plaintiff has done everything in its power to mitigate its damages and to prevent further damages as a result of the Property's compromised roofs.

39. Plaintiff repeatedly provided all information and documentation relevant to Plaintiff's contention that full roof repairs are necessary and covered under the Policy. Such information was not provided reasonable consideration by Defendant. As such, Plaintiff continued to expend time, energy, and resources to provide estimates, expert reports, and further information in support of the Claims. However, in reality, Defendant had no interest in reviewing new facts or information and did not in fact consider any additional documents or information provided by Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

40. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

41. The Policy constitutes a contract between Plaintiff and Defendant.

42. Defendant breached the Policy and purposefully attempted to deny Plaintiff its benefits under the Policy in that it:

> a. Purposefully and repeatedly adhered to a baseless position as to the value of and coverage for the Claims, specifically regarding reparability of the roofs, despite overwhelming evidence that replacement was the only viable option and that the Claims were covered and worth well over $1,000,000.00;

b. Repeatedly refused to adjust their low valuation of the Claims despite overwhelming contradictory evidence that the Claims were worth significantly more;

c. Acted intentionally in delaying the adjustment of Plaintiff's Claims, in taking unreasonable positions as to the value of the Claims, and in purposefully providing little to no explanation for refusing to adjust the Claims, all to deny Plaintiff its benefits under the Policy;

d. Repeatedly invited Plaintiff to submit further evidence as to the value of the Claim at its own expense, only to refuse to review such evidence or incorporate it into the adjustment of the Claims;

e. Repeatedly and baselessly alleging that the reports, estimates and other evidence from Plaintiff's experts had no substantive impact on the value of the Claims without any explanation or reasoning as to why they had no substantive impact;

f. Purposefully engaging in various delay tactics intended to frustrate Plaintiff's efforts to resolve the Claims, all in an attempt to pressure Plaintiff into foregoing seeking payment on the Loss, to deny Plaintiff its benefits under the Policy, and to force Plaintiff to initiate this litigation to recover the amounts owed under the Policy;

g. Generally, refusing to pay the Claims when they were due under the Policy; and

h. Otherwise breaching the terms of the Policy as Plaintiff will demonstrate at trial.

43. As a direct and proximate result of Defendant's breach of the Policy, Plaintiff has been damaged in an amount in excess of this Court's jurisdictional threshold of $25,000, and

Plaintiff is further entitled to consequential and contractual damages as proven through discovery and trial.

44. Plaintiff is entitled to prejudgment interest at the legal rate of 8%.

## SECOND CLAIM FOR RELIEF
### (Breach of the Covenant of Good Faith and Fair Dealing)

45. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

46. Defendant's conduct alleged herein was in bad faith and in violation of the covenant of good faith and fair dealing implied by law into the Policy.

47. Defendant's conduct, actions, omissions and refusals to timely and promptly adjust and pay the entire Claim constitutes bad faith. A nonexclusive list of Defendant's bad faith includes:

   a. Misrepresenting pertinent facts relating to coverages at issue, particularly regarding the extent of damage to and repairability of the Property's roofs and the value of and coverage for the Claims;

   b. Taking the position that a deceased Public Adjuster accepted, on Plaintiff's behalf, Defendant's unilateral repair offer in an attempt to frustrate adjustment of the Claims;

   c. Failing to acknowledge and act reasonably promptly upon communications with respect to the Claims;

   d. Purposefully and repeatedly adhering to a baseless position as to the value of and coverage for the Claims, specifically regarding reparability of the roofs, despite

overwhelming evidence that replacement was the only viable option and that the Claims were covered and worth well over $1,000,000.00;

e. Repeatedly inviting and requesting Plaintiff to spend its time and money gathering more estimates, reports, and other evidence of the true value of the Claims, only to completely ignore such evidence and continue to deny the Claims;

f. Refusing to provide reasonably prompt and clear communications as to why Plaintiff's estimates, reports, and evidence did not support a higher valuation of the Claims or coverage for the Claims;

g. Failing to conduct a reasonable investigation of the Claims;

h. Purposefully engaging in numerous delay tactics in order to pressure Plaintiff to forego pursuing full payment of the Claims and eventually forcing Plaintiff to initiate this lawsuit in order to recover the amount that is owed on the Claims;

i. Failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claims, despite liability under the Policy being reasonably clear;

j. Misusing its power and authority in such a way to be tantamount to outrageous conduct; and

k. As will otherwise be shown through discovery and trial.

48. As a proximate result of Defendant's breach of the covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of $1,000,000. Additionally, Plaintiff is entitled to recover punitive damages from Defendant for the above-described conduct, which was willful and wanton, in the maximum amount permitted by law.

## THIRD CLAIM FOR RELIEF
(Unfair and Deceptive Trade Practices)

49. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

50. Upon information and belief, the conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11) including, but not limited to:

   a. Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claims in which liability had become reasonably clear based on the estimates, reports, and other evidence provided by Plaintiff at the request and invitation of the Defendant;

   b. Intentionally refusing to review or consider the significant amount of evidence regarding the extent of damage to the Property and the value of the Claims provided by Plaintiff or to incorporate such evidence into its adjustment of the Claims, despite repeatedly and expressly informing Plaintiff that it would do so;

   c. Ignoring the Sworn Proof of Loss Statement provided by the Plaintiff and the expert reports and detailed repair estimates provided contemporaneous and subsequent thereto;

   d. Failing to conduct a reasonable investigation by only performing one site inspection, and only utilizing biased and predictable experts;

   e. Failing to provide any explanation or communication to Plaintiff regarding why the evidence provided by Plaintiff was insufficient to alter Defendant's denial of Plaintiff's Claims, despite the fact that such evidence overwhelmingly showed that

the Property's roofs must be replaced rather than repaired and that such replacement was covered by the Policy;

f. Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies, including the Claims, and for resolution of those claims under its policies, including the Policy;

g. Purposely refusing to abide by its own standards for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

h. Compelling the insured to institute and participate in litigation to recover amounts due as payment for the Claims by intentionally delaying resolution of the Claims, intentionally failing to communicate or explain why Plaintiff's evidence regarding the value of the Claims was insufficient to alter the initial estimate of the Claims, refusing to consider, review, incorporate, or respond to the evidence provided by Plaintiff in good faith, and otherwise delaying payment of the Claims;

i. Misrepresenting pertinent facts and policy provisions; and

j. Other particulars as will be adduced through further investigation, discovery, or at trial.

51. More particularly, with Defendant's actual and/or constructive knowledge of Plaintiff's damages and coverage therefore, Defendant unfairly and unlawfully failed to promptly investigate, adjust and pay the Claims in violation of North Carolina law and N.C.G.S. § 58-63. The factually specific statutory violations, in part, are outlined above and said violations correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

HOWARD, STALLINGS, FROM, ATKINS, ANGELL & DAVIS, P.A.
Attorneys at Law
Raleigh, North Carolina

Case 3:21-cv-00400-MOC-DSC   Document 1-1   Filed 08/03/21   Page 13 of 15

52. Defendant's above-described conduct, all in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

53. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiff and was an inequitable assertion of its power and position over Plaintiff under the circumstances.

54. The above-described conduct of the Defendant was not based upon honest disagreement or innocent mistake.

55. The above-described conduct of Defendant was committed intentionally, willfully, and with malice toward Plaintiff.

56. Defendant's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiff's rights.

57. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

58. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy as well as additional damages to be proven at trial.

59. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

60. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

61. Plaintiff's damages are not presently fully capable of admeasurement, but in any event far exceed this Court's jurisdictional threshold of $25,000.

**WHEREFORE**, Plaintiff prays the Court as follows:

1. That Plaintiff have and recover of Defendant a sum equal to the amount of $1,256,781.65, the amount provided for in Plaintiff's Proof of Loss and equal to the benefits due under the Policy, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiff be awarded treble its damages and as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. Plaintiff have such other and further relief as the Court may deem just and proper.

This the 22nd day of June, 2021.

HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.

By: *Robert Jessup*

Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiff*